David S. Freedman
Law Offices of David S. Freedman, P.C.
P.O. Box 1157
Miles City, Montana 59301
Telephone: (406) 232-5297
Facsimile: (406) 232-1012
David@MTLawOffices.com
Attorney for Plaintiff

2013 MAY -3 P 2: 17

FILED
JUN 0 8 2015
Clerk, U.S. District Court
District Of Montana
Helena

## MONTANA FIRST JUDICIAL DISTRICT COURT
## LEWIS AND CLARK COUNTY

| | |
|---|---|
| BRIAN JOHN TEMPLE, | Cause No. ADV-2015-337 |
| Plaintiff, | Judge _____ |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| PETER JOESEPH CALLAHAN, CITY OF HELENA, and ST. PETER'S HOSPITAL | CV-15-46-H-SEH (3) |
| Defendants. | |

Plaintiff, BRIAN JOHN TEMPLE, by and through his attorney David S. Freedman of Law Offices of David S. Freedman, P.C., for causes of action against Defendants, PETER JOSEPH CALLAHAN, CITY OF HELENA, and ST. PETER'S HOSPITAL, complains as follows:

### 1. PARTIES

1.1   Plaintiff, Brian John Temple, was at all times relevant to this matter, a resident of Lewis and Clark County, Montana.

1.2   Defendant, Peter Joseph Callahan, is believed to now, and at all times relevant to this matter, be a resident of Lewis and Clark County, Montana.

330249

1.3. Defendant, City of Helena, is a municipality located within Lewis and Clark County, Montana.

1.4 Defendant, St. Peter's Hospital, is now and was at all times relevant to this matter, a corporation incorporated under the laws of the state of Montana, located in Lewis and Clark County, Montana.

## 2. JURISDICTION AND VENUE

2.1 This Court has jurisdiction in this matter and venue is properly situated in Lewis and Clark County because the facts and circumstances that give rise to this Complaint occurred within Lewis and Clark County.

## 3. FACTS RELAVENT TO ALL CLAIMS

3.1 On May 4, 2011, Plaintiff Brian John Temple (Temple) arrived at the Helena Probation and Parole Office located at 111 North Rodney Street. Unbeknownst to Temple, Helena Police Department Sergeant Peter Joseph Callahan (Callahan) was awaiting Temple's arrival for the purpose of questioning Temple about thefts from an area coin shop. After Temple entered the interview room to meet with a Probation and Parole officer, Callahan entered the room and informed Temple that he wanted to question him about the coin shop thefts Callahan was investigating. Panicking, Temple immediately exited the interview room and fled the Helena Probation and Parole Office.

3.2 During the ensuing chase, Temple ran to his truck, parked nearby. As Callahan pursued Temple on foot, Callahan had a weapon drawn. When Callahan caught up to Temple, Temple was seated in the driver's seat of his truck. As Temple sat in the truck, Callahan repeatedly attempted to break the truck's driver's side window with the butt of his weapon. After Temple turned on his ignition, Callahan stepped a safe distance away from the vehicle and was

2

positioned near the driver's side rear-wheel well. By this time, Callahan had his service weapon drawn, and was considering his options for disabling Temple's truck. As Temple backed his diagonally parked vehicle out into the street, Callahan followed the path of the truck in a parallel direction, remaining near the driver's side rear-wheel well.

3.3   After Temple completed backing up his vehicle, Callahan ran out into the street, pointed his weapon at Temple, who was still seated in the driver's seat of the truck with its engine running, for the purpose of persuading Temple to exit the vehicle under threat of lethal force.

3.4   Temple did not submit to Callahan's threat of lethal force. Instead, Temple lowered his profile in case Callahan carried out his threat of lethal force, in hopes of avoiding Callahan's shot, and headed westbound on Breckenridge Street toward North Rodney Street. As Temple proceeded around Callahan, Callahan fired his service weapon through the passenger side of the front windshield, striking Temple in the chest.

3.5   Believing his injuries to be fatal, Temple immediately proceeded to St. Peter's Hospital (SPH) for treatment. While at SPH, Temple was stabilized and Life Flighted to Great Falls for further treatment.

3.6   In accordance with Helena Police Department policy specific to an officer involved shooting, Callahan was ordered to provide a blood and/or urine sample(s) to SPH for purposes of a toxicology screen. Despite the seriousness of the forthcoming charges against Temple and the high-profile nature of the May 4, 2011 events, Helena Police Department decided to leave Callahan's blood and/or urine sample(s) at SPH for analysis, rather than providing the sample(s) to Montana's State Crime Lab.

3.7   While the sample(s) was/were at SPH, the sample(s) was/were: mishandled, lost and/or destroyed. To the best of Plaintiff's knowledge, the sample(s) was/were never analyzed. The

3

mishandling, loss and/or destruction of Callahan's blood and/or urine sample(s), and the inability to have the sample(s) analyzed, materially hampers Plaintiff's claims against Callahan and City of Helena.

3.8     Since the events of May 4, 2011, Temple has suffered severe emotional distress and physical discomfort as a result of Callahan's actions. Further, Temple has had significant difficulty finding gainful employment because of the publicity associated with the May 4, 2011 shooting.

## 4. FIRST CAUSE OF ACTION – VIOLATION OF TEMPLE'S LIBERTY INTEREST

4.1     The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

4.2     City of Helena violated Temple's inalienable right to liberty guaranteed under the Montana Constitution, when Callahan used excessive force by shooting Temple, contrary to the laws of Montana and the laws of the United States.

4.3     The Montana Constitution guarantees that "[a]ll persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways." Mont. Const., Art. II § 3 (2012).

4.4     Temple's Article 2, Section 3 rights were deprived when Callahan shot Temple, under color of law, contrary to applicable state and federal law, established by conduct that is so pervasive and repetitive that it rises to the level of a custom.

4.5     City of Helena violated Temple's Article 2, Section 3 rights by failing to properly train and retain Callahan. Liability for this constitutional infringement is enforceable under 42 USCS § 1983 and *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).

4

## 5. SECOND CAUSE OF ACTION – VIOLATION OF TEMPLE'S SUBSTANTIVE DUE PROCESS RIGHTS GUARANTEED UNDER THE 14TH AMENDMENT

5.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

5.2   City of Helena violated Temple's Eighth Amendment civil right not to be subjected to cruel and unusual punishments when Callahan used excessive force by shooting Temple. USCS Const. Amend. 8. Both 42 USCS § 1983, as well as the Fourteenth Amendment, guarantee Temple the right to seek redress for this substantive due process violation. USCS Const. Amend. 14.

## 6. THIRD CAUSE OF ACTION – NEGLIGENT SUPERVISION, TRAINING AND RETENTION

6.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

6.2   City of Helena negligently supervised, trained and retained Callahan. City of Helena owed a duty to properly supervise, train and retain Callahan so that Callahan would not negligently use his firearm, nor act in such a way that his law enforcement activities would run afoul of applicable state and federal law. City of Helena breached this duty by failing to properly supervise, train and retain Callahan in such a manner that Callahan would not use his firearm, nor put himself in a position to use his firearm, contrary to applicable state and federal law. Temple suffered physical and psychological injuries as a result of City of Helena's breach of duty. But for City of Helena's failure to properly supervise, train and retain Callahan, Temple would not have sustained physical or psychological injuries.

## 7. FOURTH CAUSE OF ACTION – ASSAULT AND BATTERY

7.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

7.2   Callahan committed the torts of assault and battery when he unjustifiably shot Temple on May 4, 2013.

5

## 8. FIFTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

8.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

8.2   Callahan negligently inflicted emotional distress upon Temple, when Callahan shot Temple, resulting in distress inflicted that is so severe that no reasonable person could be expected to endure it.

## 9. SIXTH CAUSE OF ACTION – NEGLIGENCE

9.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

9.2   Callahan negligently inflicted serious bodily harm upon Temple when Callahan used deadly force upon Temple. Callahan had a duty to act in conformity with applicable state and federal law while serving as a police officer. Callahan breached this duty when he employed deadly force upon Temple, contrary to applicable state and federal law. Temple sustained both physical and psychological injuries as a result of Callahan's unlawful acts. But for the breach of this duty, Temple would not have sustained physical and psychological injuries.

## 10. SEVENTH CAUSE OF ACTION – NEGLIGENCE

10.1   The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

10.2   City of Helena negligently harmed Temple when it chose to give Callahan's blood and/or urine sample(s) to SPH for toxicology screening instead of submitting it to Montana's State Crime Lab for analysis. City of Helena owed a duty to Temple to safeguard the blood and/or urine sample(s) it ordered to be collected from Callahan related to the May 4, 2011 shooting. City of Helena breached this duty when it did not collect the sample(s) taken from Callahan and provide it to Montana's State Crime Lab. Due to the high-profile nature of any officer involved shooting, and the common practice of submitting blood and/or urine samples to the Montana State Crime Lab for analysis when the samples are related to potential criminal activity, City of

6

Helena knew or should have known not to entrust Callahan's sample(s) to SPH for testing. Temple was harmed as a result of City of Helena's breach of its duty because Temple's civil liability claim has been potentially made exponentially more difficult to prove against itself, as well as against Callahan, as a result of its negligent mishandling of Callahan's blood and/or urine sample(s).

## 11. EIGHTH CAUSE OF ACTION – NEGLIGENCE

11.1 The facts stated in part 3 are reallaged and incorporated herein as if fully set forth.

11.2 SPH negligently handled Callahan's blood and/or urine sample(s) when it was collected at SPH on or about May 4, 2011. SPH owed a duty to safeguard the sample(s) it collected and perform a toxicology screen as directed. SPH breached this duty when it either: mishandled, lost and/or destroyed the sample(s) before testing. Temple was injured by SPH's failure to properly safeguard and preserve the sample(s) collected from Callahan for testing because it severely harms Temple's ability to establish Callahan's liability specific to the shooting incident of May 4, 2011. But for SPH's mishandling of Callahan's blood and/or urine sample(s), Temple could potentially have vital evidence for establishing Callahan's willful negligence. Temple's claim for liability on the part of Callahan is potentially made exponentially more difficult by SPH's negligent mishandling of Callahan's blood and/or urine sample(s).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks relief as follows:

1. Judgment against the Defendants on behalf of Plaintiff;

2. Pre-judgment interest at the rate of 10% per annum and calculated upon an amount to be established at trial pursuant to Mont. Code Anno., § 27-1-210 and § 27-1-211 (2012);

3. Post-judgment interest at the rate of 10% per annum on the total judgment pursuant to Mont. Code Anno., § 25-9-205 (2011);

4. Court costs allowable under Mont. Code Anno., § 25-10-201 (2011);

5. Attorney's fees from City of Helena provided for under the Civil Rights Attorney's Fee Awards Act, allowable under 42 U.S.C. § 1988;

6. Compensatory damages from City of Helena in the amount of $1,500,000 for:

    a. Past and future medical costs;
    b. Loss of established way of life;
    c. Loss of privacy;
    d. Loss of future income;
    e. Mental Anguish or Suffering;

7. Compensatory damages from Peter Joseph Callahan in the amount of $2,000,000 for:

    a. Past and future medical costs;
    b. Loss of established way of life;
    c. Loss of privacy;
    d. Loss of future income;
    e. Mental Anguish or Suffering;

8. Compensatory damages from St. Peter's Hospital in the amount of $5,000,000;

9. Punitive damages from City of Helena, Peter Joseph Callahan and St. Peter's Hospital, totaling $5,000,000;

10. For any and all other relief deemed just and equitable by the Court, to include Plaintiff's attorney's fees.

DATED this 3rd day of May, 2013.

Law Offices of David S. Freedman, P.C.

By: _David S. Freedman_
David S. Freedman
Attorney at Law